UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIE AUSTIN,

    Plaintiff,

v.

CORRECTIONAL MEDICAL
SERVICES, INC., *et al.*,

    Defendants.

_____/

Case No. 1:07-CV-616

Hon. Richard Alan Enslen

**OPINION**

    This matter is before the Court on Defendants Correctional Medical Services, Inc., Raymond Gelabert, M.D., Robert Migliorimo, M.D., William Nelson, M.D., Krishn Mohan, M.D., and Kent Filsinger, P.A.'s Motion for Summary Judgment Pursuant to 42 U.S.C. § 1997e, and Defendant Donna Rohes, P.A.'s Motion for Summary Judgment Pursuant to 42 U.S.C. § 1997e. For the reasons discussed herein, Defendants' motions are both **granted in part and denied in part**.

**BACKGROUND**

    The following allegations are contained in Plaintiff's Complaint. On September 12, 2004, Plaintiff (who was "in custody" at the time) was involved in "a roll-over accident" in which he suffered injuries to his head, neck, back, and right upper and lower extremities. On February 22, 2005, Plaintiff was transferred to the Muskegon Correctional Facility ("MCF"). After arriving at MCF, and for several months thereafter, Defendants Nelson and Migliorimo, as well as "CMS doctors and nursing staff," "knowingly and intentionally" refused to provide Plaintiff with necessary and appropriate medical care to treat the various injuries he suffered in the September 12, 2004 accident.

On May 4, 2005, Plaintiff awoke with an "extremely bad migraine headache." Plaintiff exited his cell to report his condition, but "blacked-out" before he could do so. Plaintiff was taken to a hospital where he was prescribed Ultram and instructed to obtain a follow-up examination with a neurologist and orthopedic specialist. Defendants discontinued his Ultram prescription after only five days and refused to allow Plaintiff to be examined by a neurologist or orthopedic specialist.

On December 14, 2005, Plaintiff was transferred to the Handlon Correctional Facility ("MTU"). Because he was still suffering "the exact same medical discomfort and extreme pains," Plaintiff "immediately" requested to be examined by the medical staff. Plaintiff was examined by Defendant Rohes "about two to three weeks" later. Plaintiff "discussed his injuries" with Rohes who simply "decided to continue the exact same course of treatment." Plaintiff then requested a "second opinion" and was examined by Defendant Migliorimo who "continued to ignore" Plaintiff's "serious medical needs." Plaintiff was again not permitted to be examined by a neurologist or orthopedic specialist.

On December 20, 2006, Plaintiff was transferred to the Florence Crane Correctional Facility ("ACF"). Following his transfer, Plaintiff was examined by Defendant Gelabert. Plaintiff complained that he was experiencing migraine headaches, back pain, and an inability to use his right upper extremity, but received "the exact same repeated treatment." On March 3, 2007, "all" of Plaintiff's medications were "discontinued." Plaintiff was again not permitted to be examined by a neurologist or orthopedic specialist.

Plaintiff initiated this action on June 29, 2007, against the following Defendants: (1) Correctional Medical Services, Inc.; (2) Dr. Raymond Gelabert; (3) Dr. R. Migliorimo; (4) Dr. Nelson; 5) Dr. K. Mohan; (6) Physician's Assistant K. Filsinger;and (7) Physician's Assistant D.M. Rohes.

Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free from cruel or unusual punishment. Defendants now move for summary judgment on the grounds that Plaintiff has failed to properly exhaust the claims in his Complaint. As detailed herein, the Court concludes that Plaintiff has properly exhausted only certain of the claims in his Complaint.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 787 (6th Cir. 2000); *see also*

*Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Exhaustion Standard**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 127 S. Ct. 910, 921 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of

establishing. *Id.* The Supreme Court has stated "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 126 S. Ct. 2378, 2386-87 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 127 S. Ct. at 922-23.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 126 S. Ct. at 2384. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). In the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 126 S. Ct. at 2387. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3 d 1152, 1159 (11th Cir. 2005), *cert. denied,* 126 S. Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Defendants have submitted copies of eight (8) different grievances that Plaintiff filed between May 2005 and January 2007. Plaintiff has also submitted, in response to the present motions, copies of an additional grievance he filed in December 2006. Plaintiff has neither argued nor presented evidence that he pursued any other grievances. The Court shall, therefore, examine these nine grievances to determine which (if any) claims in Plaintiff's Complaint have been properly exhausted.

**II.     Relevant Grievance Policy**

Michigan Department of Corrections Policy Directive 03.02.130 (eff. Dec. 19, 2003)[1] sets forth the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at

---

[1] The MDOC subsequently amended the Grievance Policy in 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The policy provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievance. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. The "total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved." *Id.*

**III.**     **Analysis of Plaintiff's Grievances**

    A.     Grievance MCF-05-05-00372-12d

Plaintiff filed this grievance on May 18, 2005. (Dkt. No. 16, Ex. B.) In this grievance, Plaintiff asserted that "Dr. Nelson and the nursing staff" refused to provide him medical care despite requesting treatment on May 3, 2005. This grievance was rejected as untimely and duplicative of another grievance Plaintiff filed. Because Plaintiff did not pursue this grievance in accordance with the MDOC's established guidelines, the Court concludes that Plaintiff has failed to properly exhaust the claims asserted therein.

    B.     Grievance MCF-05-04-00331122

Plaintiff submitted this grievance on May 2, 2005. (Dkt. No. 16, Ex. B.) In this grievance, Plaintiff claimed that since his arrival at MCF, "the Medical Service Department here at M.C.F." has "refused and ignored [his] request for medical treatment." The grievance was rejected on the merits at step one. Defendant has provided no further evidence concerning this grievance. Because Defendant bears the burden to establish that a claim has not been exhausted (or that a grievance was not pursued in compliance with relevant MDOC policy), the Court finds that Defendant has failed to establish that Plaintiff has not properly exhausted the claims articulated in this grievance.

Having made this determination, the Court must determine against which individuals or entities such claims have been exhausted. Plaintiff asserted this particular grievance against "the Medical Service Department here at M.C.F." Defendants have not addressed this particular grievance in their pleading, but with respect to other grievances have asserted that unless a grievance expressly identifies a defendant *by name* that grievance fails to properly exhaust any claims therein against that particular defendant.

The Court recognizes that MDOC policy requires prisoners to include in their grievances the "names of all those involved in the issue being grieved." As previously noted, however, the failure to comply with this (or any other) procedural requirement constitutes a failure to properly exhaust only if prison officials reject the grievance *because of* the prisoner's failure to comply with the procedural requirement in question. Here, there is no evidence that prison officials rejected this grievance because of any alleged failure on Plaintiff's part to identify the "names of all those involved in the issue being grieved."

Plaintiff asserted this grievance against "the Medical Service Department here at M.C.F." The Court finds this language is more than sufficient to put on notice any and all individuals and entities involved with providing health care to prisoners at MCF. Moreover, in the absence of evidence establishing which Defendants (all of whom allegedly are health care providers) were responsible for providing health care to Plaintiff during the relevant time period, the Court finds that this grievance sufficiently implicates all Defendants.

In his Complaint, Plaintiff asserts that after arriving at MCF on February 22, 2005, Defendants Nelson and Migliorimo, as well as "CMS doctors and nursing staff," "knowingly and intentionally" refused to provide Plaintiff with necessary and appropriate medical care. Thus, Plaintiff has properly grieved the claim that from February 22, 2005, through May 2, 2005 (the date on which this grievance was submitted), all Defendants denied him appropriate medical treatment in violation of the Eighth Amendment. The Court recognizes that certain Defendants may be able to establish that they were not involved with providing health care to Plaintiff during the time period in question. However, such are substantive matters beyond the scope of the present motions to dismiss for failure to properly exhaust administrative remedies.

      C.      Grievance MTU-06-01-00062-012e

In this grievance, filed on January 11, 2006, Plaintiff alleged that "health care" ignored two medical kites he had recently submitted. (Dkt. No. 16, Ex. C.) This grievance was ultimately rejected as untimely because Plaintiff did not timely appeal the matter to step three of the grievance process. Because Plaintiff did not pursue this grievance in accordance with the MDOC's established guidelines, the Court concludes that Plaintiff has failed to properly exhaust the claims asserted therein. The Court further notes that the allegations contained in this grievance are not asserted in Plaintiff's Complaint.

      D.      Grievance SMT-06-09-01585-12d1

Plaintiff submitted this grievance on September 25, 2006. (Dkt. No. 16, Ex. D.) In this grievance, Plaintiff alleged that he was discharged from the hospital on August 23, 2006, with instructions to "follow-up with Dr. Patel." According to Plaintiff, as of September 25, 2006, no such follow-up appointment had been scheduled. Plaintiff filed this grievance against "S.M.T. - C.M.S. & HEALTH SERVICE STAFF." While Plaintiff pursued this grievance through all three steps of the grievance process, this particular incident is not asserted by Plaintiff in his Complaint. Thus, this grievance does not serve to exhaust any of the claims asserted in Plaintiff's Complaint.

      E.      Grievance SMT-06-09-01570-12d1

Plaintiff filed this grievance on September 25, 2006. (Dkt. No. 16, Ex. E.) In this grievance, Plaintiff alleges that on September 18, 2006, he submitted a health care request to Nurse Griffes. According to Plaintiff, Nurse Griffes ignored his request. Plaintiff pursued this matter through all three steps of the grievance process. However, Nurse Griffes is not a defendant in this action.

Moreover, the incident described in this grievance is not asserted by Plaintiff in his Complaint. Accordingly, this grievance does not serve to exhaust any of the claims asserted in Plaintiff's Complaint.

        F.        Grievance SMT-06-11-01825-12z

Plaintiff filed this grievance on October 25, 2006. (Dkt. No. 16, Ex. F.) In this grievance, Plaintiff alleged that between March 3, 2006, and July 11, 2006, Defendant Migliorimo, Defendant Rohes, and Physicians Assistant Kearney issued several medical details for Plaintiff to receive special shoes and insoles. Plaintiff alleged that various "medical personnel," including Defendant Mohan, had failed to provide him with the medical items requested by these medical details. This grievance was ultimately rejected as being untimely filed. Because Plaintiff did not pursue this grievance in accordance with the MDOC's established guidelines, the Court concludes that Plaintiff has failed to properly exhaust the claims asserted therein.

        G.        Grievance SMT-06-11-01873-12d1

Plaintiff submitted this grievance on November 9, 2006. (Dkt. No. 16, Ex. G.) In this grievance, Plaintiff asserted that x-rays of his back, taken on October 10, 2006, revealed an "abnormality" that required "follow-up." Plaintiff filed this grievance against Defendant Mohan and two other health services personnel because, as of November 9, 2006, no such follow-up appointment had been scheduled. While Plaintiff pursued this grievance through all three steps of the grievance process, this particular incident is not asserted by Plaintiff in his Complaint. Thus, this grievance does not serve to exhaust any of the claims asserted in Plaintiff's Complaint.

        H.        Grievance ACF-07-01-00056-12e3

In this grievance, filed on January 17, 2007, Plaintiff asserted that Nurse Powell had intentionally interfered with his medical treatment by failing to secure for him special shoes which had

been requested by one of Plaintiff's doctors. (Dkt. No. 16, Ex. H.) Plaintiff pursued this matter through all three steps of the grievance process. However, Nurse Powell is not a defendant in this action. Moreover, the incident described in this grievance is not asserted by Plaintiff in his Complaint. Accordingly, this grievance does not serve to exhaust any of the claims asserted in Plaintiff's Complaint.

        I.        Grievance SMT-06-12-02050-12d1

Plaintiff submitted this grievance on December 15, 2006. (Dkt. No. 31, Ex. G.) Plaintiff asserted this grievance against "C.M.S. and its medical staff" for "failure to provide reasonably adequate medical care over the course of two years." From a review of the grievance itself, it does not appear that Plaintiff pursued this matter through step three of the grievance process. In his response to the present motions, Plaintiff acknowledges that he did not pursue this matter through all three steps of the grievance process. (Dkt. No. 31 at 3). Plaintiff asserts that he did not pursue the matter to step three of the grievance process because prison officials did not timely respond to his step two appeal. As previously noted, however, even if a prisoner does not receive a timely response to a step two grievance, he must still pursue the matter to step three within ten business days after the date the step two response was due. Because Plaintiff did not pursue this grievance in accordance with the MDOC's established guidelines, the Court concludes that Plaintiff has failed to properly exhaust the claims asserted therein.

## CONCLUSION

For the reasons articulated herein, the Court concludes that Plaintiff has failed to properly exhaust the claims in his Complaint, except for the claims (asserted in Grievance MCF-05-04-00331122) that from February 22, 2005, through May 2, 2005, Defendants denied him appropriate medical treatment in violation of the Eighth Amendment. Accordingly, Defendants Correctional Medical Services, Inc., Raymond Gelabert, M.D., Robert Migliorimo, M.D., William Nelson, M.D., Krishn

Mohan, M.D., and Kent Filsinger, P.A.'s Motion for Summary Judgment Pursuant to 42 U.S.C. § 1997e is **granted in part and denied in part**, and Defendant Donna Rohes, P.A.'s Motion for Summary Judgment Pursuant to 42 U.S.C. § 1997e is **granted in part and denied in part**.

An Order and Partial Judgment consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>September 26, 2008 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |